The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning, Counsel. I don't see Counselor, but I did see Mr. Shanmugam. So if you're ready, you may proceed. Thank you, Chief Judge Gregory. Canon Shanmugam of Paul Weiss for the appellants. May it please the Court. In remanding this case, the Supreme Court directed this Court to consider all of the other potential grounds for federal jurisdiction that would support removal. To begin with, federal jurisdiction exists because Baltimore's claims are governed by federal common law. However Baltimore frames its claims, it is seeking to impose damages for injuries allegedly caused- Let me ask you this. What common law, what federal common law is there in light of the passage of the Clean Air Act? What common law is out there? Judge Floyd, there are two separate questions before the Court, and really only one of them is properly before the Court here. The first is the question of what is the appropriate source of law? Is that federal law or state law? And then the second question is the substance of the law. On the first question, the source of law, we believe that the body of law on which we rely in the briefing, the long body of Supreme Court case law, applying federal common law to claims involving interstate pollution applies here. The second question is the question of displacement, and that's a merits question, as the Supreme Court's decision in Standard Oil makes clear, and I would refer the Court to the First Circuit's decision in Swiss American, which I think draws out this distinction at some length. And that is the question of whether or not there is a valid cause of action. And on that question, it will be no surprise to you, Judge Floyd, that our position is that the Clean Air Act, in fact, does displace any federal common law, such that there is no valid federal cause of action. But that question is not before the Court. The only question before the Court is the question of the source of law, and our submission is that federal common law in this area supplies the exclusive source of law. Even though the Clean Air Act or Clean Water Act displaced common law, you're still arguing that the source of law is common law? Yes, that is correct. And again, that is because there is the threshold. That sort of seems a circular argument that, at least for me, defies logic. Well, I don't think it's a circular argument, Judge Thacker, because the Supreme Court has directed that it really is a two-step inquiry. And indeed, I think that when you look at cases like the Supreme Court's decision in AEP, the Second Circuit's decision in the City of New York, the Ninth Circuit's decision in Kivalina, although some of those cases began in federal court, I think they lay this out. Indeed, if you take a look at the Second Circuit's decision in City of New York, again, a case that began in federal court, the Court first assessed the question of whether or not this is an area in which federal common law applies before proceeding to the question of displacement by the Clean Air Act. Which then it said the Clean Air Act did displace common law. So are you saying we're just not to that point yet, and when we get to that point, you'll lose then, but you don't lose now? The plaintiff will lose then, in our view, but that will be a merits question that would presumably be resolved on a motion to dismiss once the question of the appropriate forum is resolved. And on that sort of threshold question, there's sort of two components of what we think that this Court needs to address today. The first is the question of whether or not federal common law, in fact, applies in this area. And as I was noting a minute ago, our submission is that it really follows a fortiori from the body of case law applying federal common law to claims of interstate pollution, because these claims go further than mere claims of interstate pollution. They have an interstate and indeed an international component because of the pervasive role of federal government in regulating global climate change. The second question before the Court today, which is really the issue that my friend Mr. Scher raises in his briefs, is whether if federal common law applies, removal is appropriate. And on that question, we rely primarily on this Court's decisions in Caudill and North Carolina, which stand for the proposition that where federal common law supplies the claims necessarily arise under federal law, and removal is thus appropriate. And Baltimore, in our view, can't plead around the body of case law applying federal common law to similar claims simply by labeling its claims as state law claims. Now I think Mr. Scher's primary submission and Baltimore's primary submission here is that the only possible bases for removal of claims pleaded under state law are where the federal issue or are completely preempted by a federal statute. But not only is that proposition belied, not just by this Court's decisions in Caudill and North Carolina, but by the decisions of other circuits. We cite the Sam L. Majors decision from the Fifth Circuit, among others. But it really doesn't make any sense, because the upshot of such a rule would be that a plaintiff would be able to avoid the application of federal common law simply by asserting that its claims arose under state law. And again, in our view, the relevance of federal common law here is not that it merely supplies a defense. It supplies the exclusive source of law, the rules of decision that would govern the plaintiff's claims. And again, Judge Thacker, that leaves us unanswered. Isn't your argument equally as broad? As I understand your argument, it almost doesn't matter how plaintiffs frame their complaints if, in your view, it sweeps so broadly that it involves climate change or global emissions. It would always be federal jurisdiction, no matter what the claims are actually in the complaint. I think in our view, the causes of action don't matter, as long as the plaintiff's theory rests centrally on the production and sale of fossil fuels and the use of fossil fuels worldwide. We think that's true with regard to all of plaintiffs' causes of action here, but it certainly is true with regard to claims like the nuisance and trespass claims, which are exactly the same type of claims, Judge Thacker, that were at issue in the Second Circuit. That puts the defendant in charge of what plaintiffs' claims really are and does sweep as broadly as it sounds to me like you're arguing it sweeps. Everything would be federal, no matter what the plaintiff's claims are. Not at all, Judge Thacker, and while Baltimore suggests that we're somehow running roughshod over the principle that a plaintiff is the master of its complaint, let me explain why that's not true. I think this is very analogous to a garden variety choice of law question. Let's say that a plaintiff brought a claim, I live in the Commonwealth of Virginia, and let's say that there was a car accident, and the plaintiff nevertheless brought a claim saying that Maryland law applies. I think what a court would do under those circumstances, assuming as I think would be true, the choice of law principles would say that the law of the Commonwealth of Virginia applies, is that the court would simply say, we're going to apply Virginia law to these claims. What we're arguing here is analogous to that, and this isn't a pure choice of law question. The question of whether or not federal common law applies is governed by a discrete body of case law set out by the Supreme Court, but what we're basically saying is that where the exclusive source of law, again, the rules of decision that govern the merits of the are supplied by federal law, the claims necessarily arise under federal law for purposes of 1331. Mr. Shanmugam, the Supreme Court asked us to consider all the grounds of removal, and of course you've talked extensively about the federal common law. What other grounds for removal would you hang your hat on? So we certainly continue to rely on all of the other grounds that we advanced in the initial briefing, but as you'll be aware, Judge Floyd, in the supplemental briefing, we focus on two grounds that we think provide the straightest path for this court to hold that federal law applies here. I've talked already about federal common law, and I think the reason why I started with federal common law is that we now have this- All those other arguments, even though you didn't address them in your supplemental briefs? We're not abandoning them, Judge Sacker, because we're content, particularly given the limitations on space in the supplemental briefs. We're really content to rest on our original briefing, and I'm happy to answer any questions about them, but I think the reason why we are relying primarily on federal common law is that we now, in 2022, and this case has obviously been around for a little while, we now have a meaningful body of case law, not just talking about federal common law in the context of interstate pollution, but talking about it in the context of global climate change specifically, and if I could point the court to one decision today, it would be the Second Circuit's decision in the City of New York case, which I think sets out with regard to a complaint that is really difficult to distinguish from the complaint at issue here. Why it is that it follows from this earlier- Well, City of New York was not a removal case, was it? Well, that is correct, and the one respect in which we would slightly disagree with the City of New York decision is the extent to which the City of New York suggested, well, the analysis might be different if it were a removal case. We're relying on that decision primarily for its extended and I think very thoughtful discussion as to why federal common law applies here. The Second Circuit obviously didn't have before it as a necessary issue the question of whether or not removal is appropriate, Judge Thacker, for the reason you say, because that case was filed initially in federal court. On that discrete issue, again, we're pointing to this court's case law in the Caudill case and the North Carolina case, and while Baltimore suggests in its brief that Caudill has been abrogated insofar as the Supreme Court has suggested that federal common law doesn't apply to that particular category of claim, I think Caudill is still very much good law reaffirmed by the North Carolina decision for the common sense proposition that where federal common law supplies the rule of decision, the claim necessarily arises under federal law for purposes of Section 1331, and once that's true, it would be nonsensical to say that removal is inappropriate, because removal is coterminous with the existence of federal jurisdiction. Yeah, but after Empire Health Choice, isn't that just dicta in Caudill? No, I don't think so, because... What holding can you rely on to support your argument for removal? Because you started off with counting Caudill, but you finally got to Empire Health Choice, but is there much left of that case that will help you in terms of your position, this case should be removed in federal court? Yes, Chief Judge Gregory, and that's because, again, there are sort of two separate issues. The first is the question of whether or not federal common law applies in a particular context. The second question, and the one that I think we've just been discussing, is whether or not once federal common law applies, removal is appropriate, and on that question, I would point the court to the discussion, particularly at page 77 of the Caudill opinion, this is 999F2nd, and at that point, the court says that once a claim arises under federal law, because federal common law applies, removal is therefore appropriate. And so even if federal common law doesn't apply to that particular category of claim, which was obviously a very discrete category of claim involving federal health benefits, the point of Caudill is once federal common law applies, once it supplies the rules of decision, removal is appropriate, and again, I think the North Carolina decision, which obviously involves a quite different context of application of federal common law, and which postdates Grable, confirms that proposition, and we point to the decisions of numerous other circuits on that proposition, and I would point the court in particular to the Sam L. Majors decision from the Fifth Circuit that has the most extensive discussion on that point. And again, just to say one last thing about why federal common law applies in this context, and I want to get back to Judge Floyd's question, the reason that federal common law applies here is, again, not just because federal common law applies to claims of interstate pollution, which is a context in which the Supreme Court has said that the interstate nature of the controversy makes it inappropriate for state law to control, it's because in this context of global climate change, you have two additional factors. The first additional factor is that you have a state really attempting to project its regulatory policies outside its borders, and doing so in a way that has not just interstate but international components, and second, this is a context in which there obviously is a significant federal interest in regulation, global climate change is obviously the subject of international agreements as well as pervasive regulation by the federal government, and therefore, again, in our view, it follows a fortiori that federal common law applies, and we would point not just to the Second Circuit's decision in the city of New York, but also to the Supreme Court's decision in AEP and the Ninth Circuit's decision in Kivalina. Judge Floyd asked about the other grounds for removal, and I just want to say a word in my remaining minute and a half about the other ground on which we primarily focused in our supplemental brief, and that is removal under OXLA. In our view, Baltimore's claims have a sufficient nexus with appellants' operations on the outer continental shelf to justify removal, and Baltimore doesn't really contest the key facts for that purpose, which are, you know, first, that appellants are among the world's largest fossil fuel producers, but second, that a significant portion of their production takes place on the outer continental shelf. Instead, Baltimore's argument here is that appellants have failed to establish but-for causation between Baltimore's claims and appellants' operations on the outer continental shelf. Now, we think that the plain language of OXLA suggests that but-for causation is not required. We point to the Ford Motor Company decision from the Supreme Court, which involved a very similar test, albeit a test for personal jurisdiction, for the proposition that causation is not a statute which provides for jurisdiction over actions either arising out of or in connection with operations on the outer continental shelf, and I would submit that when Baltimore's theory of harm is properly understood, and it's a theory of harm that explicitly and necessarily depends on the production of fossil fuels and the use of appellants' fossil fuel products, that the requisite nexus exists really whether or not but-for causation is required, and again, we think that these two grounds provide the straightest course for this court to hold that federal jurisdiction is appropriate here. I see that my time has expired, so unless there are any further questions, I won't- Hold on. Let me show it. Let's see. Chairman, you say that basically any suit that would involve perhaps your ability to engage in exploration of oil would be something that would be federal jurisdiction. Well- That could be any suit, right? Any suit where you've got a large judgment against you would obviously have an impact on your operations because you may not have enough money to do what you do. I mean, that's a circular argument, I think, or a self-fulfilling prophecy. So Chief Judge Gregory, two points. So our first submission to the court is that because here the theory of harm explicitly depends on our production and all of our production worldwide, we think that there is opposite jurisdiction. And I would point you to the Fifth Circuit's decision in United Offshore and the decision of the Western District of Louisiana in Superior Oil for evidence of just how broadly courts apply this principle. And I think that the law of the Fifth Circuit in this regard is instructive. These are cases involving contractual disputes over who controls the operation of a gas pipeline or contracts for the sale of natural gas. Now we have a second theory, as you'll be aware from our supplemental briefing, which is that the relief that Baltimore seeks would deter, if not render entirely impractical, any further production on the outer continental shelf. And I don't think that that means that any effort to impose liability on appellants is going to give rise to oxalate jurisdiction. It's just that the relief that is being sought here by Baltimore is so extraordinary, potentially billions of dollars in compensatory and punitive damages, disgorgement, and equitable relief, including abatement, that that could provide an alternative basis for jurisdiction under oxalate if you reject our primary submission. Okay, unless the court has any further questions, I'll reserve the balance of my time for rebuttal. Thank you. Thank you, Mr. Shanmugam. Thank you. Mr. Shah? Good morning, your honors, and may it please the court. There are two really remarkable absences from my friend's argument and from appellants' positions in their papers. The first is even a mention of the Ninth Circuit's decision in Oakland, which involved a case very much like this and is on all fours on the jurisdictional question. And the second is any appreciation of both this panel's prior holding about what this case is about and the actual allegations of the complaint. This court has already held that this complaint rests on defendants' lack of warnings and is abetted by a sophisticated disinformation campaign. And that set of allegations which permeate the complaint in every cause of action provide a purely state law claim that is proven only by reference to state law. And in contrast to every case that my friend relies on, there is no necessary element of federal law, regulation, policy, action, conduct, contract, or anything. What about the fact, as opposing counsel argues, that the impact of the complaint would exceed Maryland's borders and, in fact, the goal of the complaint appears to be to redress global climate change? Well, Your Honor, let me take the second point first. The goal of the complaint, sadly, cannot address global climate change. It's focused very narrowly on a past pattern of conduct based on deception and failure to warn, and it seeks compensatory damages for injuries that flow from that past conduct. Policy issues, future forward-looking conduct, are not part of either the remedy or the claims for relief. What about the fact that opposing counsel argued that Maryland, by this lawsuit, seeks to impose its regulatory standards beyond its borders? Well, states are allowed to redress injuries for conduct that occurs outside of their borders when they injure the state inside the borders. That's well established. And, in fact, even in the BMW v. Gore case, the court acknowledged that as long as a case is in pursuit of a state interest, that's a legitimate and entirely appropriate thing. I think, Your Honor, that the notion of extraterritorial reach of a claim where in-state residents and plaintiffs have been injured is a misdirection. If you look at cases like Jackson from the Fifth Circuit about asbestos, it says that a dispute cannot become interstate in the sense of requiring application of federal law merely because conflict is not confined within the boundaries of the state. And in the Agent Orange case, the Second Circuit said that there is no federal interest in uniformity for its own sake. The fact that application of state law may produce a variety of results is of no moment. It is the nature of a federal system. And what these cases stand for is that where a state interest is at issue in a case and the court, the plaintiff, excuse me, can put its case together without reliance on a federal issue, there is no federal removal jurisdiction. It's simply there is nothing in our complaint that depends on a federal duty, law, regulation, or issue. Well, Mr. Sherrod, let me ask you this. Does it give you pause that you have used the word production in your complaint? And that would go to the outer shelf. Wouldn't you be better off just to delete production from your complaint? And then I don't know what they'd have to fuss about then. Well, they'd find something, I'm sure, Your Honor. The question for jurisdictional purposes is not whether there is a federal-based theory in the case, but rather whether there is a state court theory independent of that. And if you look at this court's cases, in cases like Dixon, where there was a state law claim and a First Amendment claim pled by the plaintiff, and the court said the First Amendment claim doesn't matter because they can succeed on their state law claim without it. The Pinney case, similar, there's many references to federal regulations. Flying Pigs, despite the importance of patent law in the case, there's no significant federal issue that's necessarily raised. And actually, in Burrell, Your Honor, in which you were on the panel, Judge Floyd, there was no jurisdiction, even though the federal drug administration regulations expressly preempted different and additional state requirements. And the court pointed out in that case that that conflates the question of preemption with the question of jurisdiction, and North Carolina's cases are fully capable of applying federal preemption law. To the extent that there are federal issues, and I'm sure that my friends on the other side will raise them in motions to dismiss and in motions for summary judgment and probably otherwise that involve federal preemption defenses, the state court will be entirely competent to hear them and resolve them. And as the Supreme Court made clear in the Manning case, it is an important principle of federalism to allow state courts to do that and not to appropriate that role exclusively to the federal courts. Oakland is directly on point. It involved removal jurisdiction of a claim that is actually quite similar to the cities here. New York, on the other hand, by the Second Circuit's own description of what it was doing, was a merits case, not a removal case. And the other cases that my friend relied on, the standard oil case, for example, and the Swiss American case out of the First Circuit, those were, in fact, choice of law cases. But there was no question of federal court jurisdiction. Both of them had been filed in federal court with the United States as a plaintiff. And that's a fundamental distinction between that case, those cases, rather, this case and the Ninth Circuit case in Oakland, which, as I say, is on all four. In a moment more on Oakland, in that case, the district court had denied remand on exactly the theories that my friend is promoting here and then dismissed the case on the merits. And the Ninth Circuit held explicitly that the only test to apply is grable on the first hand or complete preemption on the other, neither of which supported removal. I wanted to offer a brief word about a theme in the defendant's papers, which has to do with the focus on emissions as the source of injury here. And they bootstrap that up to this is an emissions case and therefore falls within the Clean Air Act or federal common law. And it misunderstands the tort at issue here. Our burden at trial will be to show that the failures to warn and the deception campaign were substantial factors in exacerbating emissions, making them greater and thereby exacerbating the harms. And if we don't meet that burden, we lose. But conversely, the fact that there are other factors or other steps in the causal chain does not determine that federal jurisdiction is exclusive. Let me say a word about Caudill in North Carolina. I think Empire did, as Chief Judge Gregory's question suggested, Empire did not leave much of anything of Caudill as a rule. But beyond that, in that complaint, the court found that the complaint on its face raised federal contracts and an intricate web of federal regulations for health care. And that those concerns and federal issues which were on the face of the complaint supported removal jurisdiction. In that sense, the case applied the well-pleaded complaint rule and is actually consistent with Grable. To the extent that it goes beyond that, it was limited, if not completely abrogated by the Supreme Court and Empire, which found that despite that extensive and thorough web of federal relationships that governed the plaintiff's claim, that there was not federal common law to apply. And the court famously said, there is no cause to display state law, much less to lodge this case in federal court. So proximity to federal issues does not equate federal common law, and it does not support removal jurisdiction. Alcoa was very much the same. That's the North Carolina case that Mr. Shanmugam referred to, in that the claim to title on its face for submerged lands turned on a key federal issue, and there was no avoiding it. This court, just last week in the Old Dominion case, found that earlier case law that predates the complaint rule and applies it, can remain viable, and there's nothing inconsistent with Alcoa in this case. And by the way, Alcoa relied on Franchise Tax Board, the Supreme Court case that the court has later said was a predecessor to Grable. With respect to Oxlip, just a quick word on that. There's no jurisdiction under that law, because similar to the court's prior holding with regard to federal officer removal, any connection between fossil fuel production on the OCS and the conduct alleged in the complaint is simply too remote. The injuries here were not caused by, and do not arise from, and do not interfere with, any physical operations on the Outer Continental Shelf. And nothing in the Supreme Court's recent decision in Ford on personal jurisdiction, which construed different language having a different purpose, has any bearing on this jurisdictional provision. We think that the other issues have been dealt with well in the papers, and unless the panel has more questions for me, I'll be happy to sit down. All right. Thank you, Mr. Sheriff. Mr. Shanmugam, you have some time reserved. Thank you, Chief Judge Gregory. Just four quick points. First, on the Ninth Circuit's decision in the City of Oakland, we addressed that decision at pages seven to eight of our supplemental reply brief. But very briefly, we believe that that decision does not address the question of whether or not federal common law applies. Instead, it proceeds on the assumption, which we obviously think is an incorrect assumption, that claims arising under federal common law are not removable to federal court, because they don't implicate either grable or the complete preemption doctrine. And for the reasons that I gave in my opening argument, we think that that aspect of the Ninth Circuit's decision is incorrect. Second, my friend Mr. Sheriff suggests that this court's prior decision in this case is somehow controlling of the issues that are currently before the court. Of course, that decision addressed only the federal officer removal ground for removal, precisely because, as the Supreme Court later told us was not true, the court under prior precedent believed that its appellate review was limited to that issue. But to the extent that this court in the earlier decision addressed this question of the appropriate characterization of the claims. We believe that the critical point here is that the complaint by its terms makes clear that whatever the theory of liability, and there are eight claims in the complaint, the mechanism of harm is greenhouse gas emissions that take place worldwide. None of these claims can go forward without the plaintiffs establishing the use of fossil fuels worldwide as an element of their theory of causation. And the relief that is being sought here is much broader than my friend Mr. Sheriff suggests. It's not just compensatory damages for past conduct, and it's not just compensatory and punitive damages. It's also disgorgement and equitable relief, including abatement of the nuisance. So Judge Floyd, to go to your question, the plaintiff here can't simply delete the references to production, references that I would respectfully submit are pervasive in this complaint, both in the body of the complaint and in each of the relevant claims. Again, the mechanism of harm, the theory of liability here is that production and use of fossil fuels worldwide resulted in the harms for which a plaintiff is seeking relief. And of course, for purposes of removal, if even one of the claims in this complaint can be characterized in the way that I've just suggested, then federal jurisdiction is appropriate. And at a minimum, with regard to the nuisance and trespass claims, again, exactly the same claims that were at issue in the city of New York, we believe that those claims cannot fairly be characterized as simply about misrepresentations. Third, Mr. Sheriff suggests and talks at great length about whether or not there is a federal duty or whether or not there are regulations on point. That at most goes to the question of whether or not there is federal jurisdiction under Grable. And we obviously respectfully disagree with Baltimore on that point. But that doesn't really have anything to do with either the federal common law ground for removal or the OCSLA ground for removal here. And so I just want to be clear that to the extent that the court is addressing those grounds, the question of whether or not there is somehow a federal duty or regulation on point is not dispositive. And finally, the last thing I would say is that it would be really problematic for this court to sanction what Baltimore is doing here, because it could result in 50 states, each applying their own state laws to what is concededly a global issue, the issue of global climate change. And Mr. Sheriff and I were both present, albeit telephonically, at the Supreme Court arguments in this case, where the United States itself said, and I'm quoting, that the plaintiff in this case, quote, tried to plead around the court's decision in AEP, but its case still depends on alleged injuries to plaintiff caused by emissions from all over the world. And those emissions just can't be subjected to potentially conflicting regulations by every state and city. Our fundamental submission here is that these claims should be governed by a uniform body of federal law. That is precisely the context in which the Supreme Court has said that federal common law applies. And for that reason, federal jurisdiction is appropriate, and the district court's remand order should be reversed. Thank you so much. Thank you both, counsel, for a well-argued case in helping the court on these very difficult and complex issues. We wish you could come down and extend our hand to make clear how much our appreciation is, but we can't. But nonetheless, that is just as much heartfelt and very much appreciated. And we wish you well and stay well and be safe. Thank you, counsel. Thank you.
judges: Roger L. Gregory, Stephanie D. Thacker, Henry F. Floyd